IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Case No. 06-cv-02174-REB-BNB

JONATHAN LEMERY,

    Plaintiff,

v.

CITY OF BOULDER,
MARK R. BECKNER,
RICHARD FRENCH,
JOHN DOE 1, and
JOHN DOE 2,

    Defendants.

## ORDER CONCERNING MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the **Motion for Summary Judgment** [#22], filed by defendants Mark Beckner, Richard French, and the City of Boulder on April 3, 2007. The plaintiff has filed a response [#29], and the defendants have filed a reply [#37]. I grant the motion in part and deny it in part.

### I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. ***Matsushita Electric Industrial Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." ***Concrete Works, Inc.***, 36 F.3d at 1518 (citing ***Celotex Corp.***, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in his or her pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); ***Celotex Corp.***, 477 U.S. at 324.  The factual record must be viewed in the light most favorable to the nonmoving party. ***Concrete Works, Inc.***, 36 F.3d at 1517 (citing ***Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.***, 912 F.2d 1238, 1241 (10th Cir.1990)).

### III.  FACTS

This case concerns an incident in which the plaintiff, Jonathan Lemery, was hit in the eye by a pepper ball allegedly fired from a pepper ball launcher operated by defendant, Richard French.  At the time of the incident, French was working as an

officer of the Boulder Police Department. Based on this incident, Lemery asserts two claims against the defendants. First, Lemery alleges that the defendants violated his Fourth Amendment right against unreasonable seizure of his person. Second, Lemery asserts a substantive due process claim, alleging that the defendants' use of force was conscience shocking, and, thus, violated the Due Process Clause of the Fourteenth Amendment.

In October, 2004, the City of Boulder gave a permit to a college student to have a block party near the intersection of 10th Street and College Avenue on October 31, 2004. According to the plaintiff, the Boulder Police Department first was notified of the block party when defendant, Richard French, a Boulder police officer, drove by the area of 10th and College and observed the block party. French then returned to the Boulder Police Department annex, located at 13th and College. French and other officers later were called to the block party, and the police department started breaking up house parties in the area, forcing a large number of young adults into the streets of the area. The police confiscated kegs of beer as part of their efforts to break up the parties, and the crowd in the streets became unruly as this was happening. The police withdrew from the area and regrouped at 9th and College.

Sometime later, French was directed by a commander to "deliver [tear] gas to 10th and College." *Plaintiff's response*, Exhibit 1 (French deposition), 62:19 - 64: 24. The tear gas was meant to disburse the crowd at 10th and College. French drove a police Suburban east on College Avenue from 9th toward 10th to deploy the tear gas, and the tear gas was deployed. Five or six other officers were seated in the Suburban, one was riding on the rear, and four were riding on the running boards on either side of

3

the Suburban. French and Officer Scott Morris had pepper ball launchers.

French stopped the Suburban just west of 10th Street on College Avenue. At this point, plaintiff Johnathan Lemery's house was just across College Avenue, north of French's car. Sergeant Seper of the Boulder Police walked up to the window of French's car to discuss the situation with French. Seper directed French and other officers present to drive their vehicles onto 10th street from College Avenue. French says that when Seper moved away from the window of French's car, French saw people on the sidewalk on the north side of College Ave, near Lemery's house. French says he then fired four to eight pepper balls directly across College Avenue toward cars on the north side of College Avenue. French says he intended to have the pepper balls hit the side of the cars, but he noted that the rounds were hitting the street below the cars. French says he then raised the barrel of the pepper ball launcher and then could hear the pepper balls hitting the side of the cars. As he fired these pepper balls, French was holding the pepper ball launcher with one hand and shooting without using the sight on the pepper ball launcher.

Lemery says that after the tear gas was dispersed near his house, 15 to 20 people he did not know ran into his house, attempting to avoid the effects of the tear gas. Lemery then went out the back door of his house, and stood on the back porch for about a minute. He then decided to seek assistance in clearing the strangers from his house. He intended to seek help from police officers he saw on 10th Street, who did not appear to be doing anything. Lemery had noticed three officers standing by French's Suburban on 10th Street talking to each other. Lemery began to walk down his driveway, which led to the north side of 10th Street, toward the police Suburban on 10th

Street.  He was hit in the eye with a pepper ball when he was near the bottom of his driveway.

French says he was firing pepper balls at the time because he had seen people behind cars parked on the north side of College Avenue, and because people were throwing projectiles toward the police on College Avenue from the north side of the street.  *Motion for Summary Judgment*, Exhibit A (French deposition), pp. 87 - 89.  In addition, French says he wanted to ensure that people did not follow behind French's police car as the car moved forward toward 10th Street.  *Id*.

Lemery argues that the evidence in the record supports a conclusion that French intentionally targeted Lemery when French fired the pepper ball that hit Lemery. Lemery has testified that the police officers standing next to French's police car were "just kind of nonchalantly kind of hanging out" as Lemery began to approach those officers.  *Response to motion for summary judgment*, Exhibit 5 (Lemery deposition), p. 90:21-25.  If true, this behavior by the police officers indicates that they were not being threatened by projectiles thrown from Lemery's direction, or by people hiding behind cars in Lemery's vicinity.

After an investigation of the incident, including a detailed review of a police video of the incident, the Boulder Police Department reached similar conclusions concerning the circumstances just before and after Lemery was hit with the pepper ball. *Response to motion for summary judgment*, Exhibit 6.  The department concluded that nobody in the vicinity of French's car was hiding behind cars on the north side of College avenue, or was throwing rocks at the police officers near French's car.  The department concluded also that some of the officers standing near to French's car just

5

before Lemery was hit had their backs to the north side of College Avenue and did not exhibit any concern with being hit from a rock from the north side of College Avenue. *Id.*

French stated at one time that he was targeting people on the north side of College Avenue with pepper balls, aiming to hit them below the waist. *Id.*, p. 12. Lemery says the relatively short distance between French and Lemery also supports the inference that French targeted Lemery, as opposed to hitting him accidentally.

## IV. ANALYSIS

### A. Fourth Amendment

The defendants argue that the undisputed facts in the record show that French did not seize Lemery when French shot the pepper ball that hit Lemery in the eye. Absent a seizure, the defendants argue, Lemery cannot assert a Fourth Amendment claim based on the incident. Lemery argues contrastingly that French's actions constitute a seizure under the Fourth Amendment.

> Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful.

***Brower v. County of Inyo***, 489 U.S. 593, 596 (1989).  "(W)henever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person." ***Terry v. Ohio***, 392 U.S. 1, 16 (1968). However, an assertion of force or authority by the police which does not cause the submission of the person targeted does not constitute a Fourth Amendment seizure. ***Bella v. Chamberlain***, 24 F.3d 1251, 1255 (10th Cir. 1994) (citing cases). For example, when police officers shoot a vehicle driven by a person who is fleeing, and when the officers create roadblocks in an

6

effort to stop a vehicle, no seizure occurs if the force and authority used by police do not cause the fleeing person to stop. *Id*. (citing cases). A seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" **Brower**, 489 U.S. at 596 - 597 (emphasis in original).

Viewing the undisputed facts in the record in the light most favorable to the plaintiff, no reasonable fact finder could conclude that French's firing of the pepper ball that hit Lemery in the eye constituted a Fourth Amendment seizure. Lemery was momentarily stopped in his driveway after he was hit. However, a short time after he was hit, he walked back into his house, unimpeded by any police commands or police actions. Even if French did intend to terminate Lemery's freedom of movement by firing the pepper ball, French did not accomplish that goal. Again, Lemery got up and walked away shortly after he was hit with the pepper ball. These undisputed facts do not establish a Fourth Amendment seizure. **See, e.g., Bella v. Chamberlain**, 24 F.3d 1251, 1256 (10th Cir. 1994) (shots fired by police at fleeing helicopter, including shot that hit helicopter, did not constitute a Fourth Amendment seizure; shots did not stop helicopter or cause pilot to submit to police control).

Absent a Fourth Amendment seizure, Lemery cannot establish a valid Fourth Amendment claim. Lemery's Fourth Amendment claim against all of the defendants is founded on the assertion that French's actions constituted a Fourth Amendment seizure. Therefore, the defendants' motion for summary judgment is granted as to Lemery's Fourth Amendment claim.

### B. Substantive Due Process

The United States Supreme Court has held that a claim that police have used

excessive force must be analyzed under the Fourth Amendment if the force in question was used in the course of a Fourth Amendment seizure.  **Graham v. Connor**, 490 U.S. 386, 394 - 395 (1989).  If a Fourth Amendment seizure is at issue, then a substantive due process analysis is not applicable.  **Id**.  As noted in **Graham**, a substantive due process analysis often has been used to analyze excessive force claims.  **Id**. at 390 - 393 (citing cases); **Dixon v. Richer**, 922 F.2d 1456, 1460 - 1462 (10th Cir. 1991) (examining effect of **Graham** on substantive due process analysis of excessive force claims).  **Graham** simply limits the applicability of the substantive due process analysis to situations that do not involve a Fourth Amendment seizure.  As discussed above, a Fourth Amendment seizure is not at issue in this case.

Lemery alleges that French's actions violated Lemery's rights under the substantive protections of the Fourteenth Amendment's Due Process Clause.  To establish a substantive due process claim, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.  Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  **Tonkovich v. Kansas Board of Regents**, 159 F.3d 504, 528 (10th Cir. 1998) (citation and internal quotation marks omitted).

> We examine three factors in determining whether force was excessive within the meaning of the Fourteenth Amendment: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor. **Hannula v. City of Lakewood**, 907 F.2d 129, 131-32 (10th Cir.1990). Force inspired by malice or by "unwise, excessive zeal amounting to an abuse of official power that shocks the conscience ... may be redressed under [the Fourteenth Amendment]." **Hewitt v. City of Truth or Consequences**, 758 F.2d 1375, 1379 (10th Cir.1985).

8

***Roska ex rel. Roska v. Peterson***, 328 F.3d 1230, 1243 (10th Cir. 2003).  In ***Roska***, the Tenth Circuit analyzed an excessive force claim under a substantive due process standard because the court concluded that the plaintiffs had not established a Fourth Amendment seizure.  ***Id***.  "[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'"  ***Uhlrig v. Harder***, 64 F.3d 567, 573 (10th Cir. 1995) (quoting ***Collins v. City of Harker Heights***, 503 U.S. 115, 126 (1992)), ***cert. denied***, 516 U.S. 1118 (1996).

When evaluating a substantive due process claim in the context of a motion for summary judgment I must determine whether, viewing the facts in the light most favorable to the plaintiff, the challenged government conduct would "shock the conscience of federal judges."  ***See Uhlrig v. Harder***, 64 F.3d 567, 573 (10th Cir. 1995) (quoting ***Collins v. City of Harker Heights***, 503 U.S. 115, 126 (1992)), ***cert. denied***, 516 U.S. 1118 (1996) (stating "shocks the conscience" test).  If the plaintiff satisfies this standard on summary judgment, then the substantive due process claim ultimately may be resolved by a jury.  ***See Johnson v. Holmes***, 455 F.3d 1133, 1141 - 1142 (10th Cir. 2006) (upholding jury resolution of substantive due process claim using "shocks the conscience" standard).

1.  Conscience Shocking Conduct

Viewing the facts in the record in the light most favorable to Lemery, as I must, I find that a reasonable fact finder could conclude that French intentionally targeted Lemery with a pepper ball while neither Lemery nor the surrounding circumstances reasonably could have been perceived as a threat to French or to other officers.  In that circumstance, there would be a dramatic imbalance in the relationship between the

9

amount of force used and the need presented. Further, Lemery was shot in the eye with a pepper ball, and the extent of the injury inflicted is significant. Finally, if the circumstances were as Lemery portrays them, then French could be seen as having acted with malice or excessive zeal that is outrageous. If a fact finder concluded that the circumstances were as Lemery portrays them, including that French acted with malice or excessive zeal, then I find, as a matter of law, that French's conduct would shock the conscience of this federal judge.

### 2.  Genuine Issues of Material Fact

Having reviewed the arguments, authorities, and evidence presented by the parties, it is apparent that there exist genuine issues of material fact relevant to Lemery's substantive due process claim. Those issues are not appropriate for summary resolution. Again, viewing the facts in the record in the light most favorable to Lemery, a reasonable fact finder could conclude that French intentionally targeted Lemery with a pepper ball while neither Lemery nor the surrounding circumstances reasonably could have been perceived as a threat to French or to other officers, and that French acted with malice or excessive zeal. If a fact finder reached these conclusions, then a reasonable fact finder could conclude also that French's actions rose to a level of outrageousness and a magnitude of actual harm that are conscience shocking.

### 3.  Conclusion

I must deny the defendants' motion for summary judgment as to Lemery's substantive due process claim because there are genuine issues of material fact relevant to Lemery's substantive due process claim.

### C. Qualified Immunity

Both individual defendants argue that the doctrine of qualified immunity shields them from Lemery's claims. The individual defendants are Mark Beckner, Chief of Police of the Boulder Police Department, and Richard French, a Boulder police officer.

Qualified immunity shields public officials from civil damages liability if their actions did not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" **Pino v. Higgs**, 75 F.3d 1461, 1467 (10th Cir. 1996) (quoting **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982)). The qualified immunity defense "cannot be analogized to other affirmative defenses because of the interests implicated in suits against government officials. Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial." **Pueblo Neighborhood Health Centers, Inc. v. Losavio**, 847 F.2d 642, 645 (10th Cir.1988). The defense is only available to those defendants sued in their individual capacities. **See Moore v. City of Wynnewood**, 57 F.3d 924, 929 n. 4 (10th Cir.1995).

A motion for summary judgment asserting the defense of qualified immunity must be reviewed differently from other summary judgment motions. **Holland v. Harrington**, 268 F.3d 1179, 1185 (10th Cir. 2001), cert. denied, 535 U.S. 1056 (2002). After a defendant asserts qualified immunity, the burden shifts to the plaintiff. **Scull v. New Mexico**, 236 F.3d 588, 595 (10th Cir.2000). The plaintiff first must establish "that the defendant's actions violated a constitutional or statutory right." **Albright v. Rodriguez**, 51 F.3d at 1531, 1534 (10th Cir. 1995); **Wilson v. Layne**, 526 U.S. 603, 609 (1999) (noting the court must first decide whether the plaintiff has alleged deprivation of a

11

constitutional right).  This burden means coming forward with specific facts establishing the violation.  **Taylor v. Meacham**, 82 F.3d 1556, 1559 (10th Cir.1996).

If the plaintiff establishes a violation of a constitutional or statutory right, then he must demonstrate that the right at issue was clearly established *at the time* of the defendant's alleged unlawful conduct.  **Albright**, 51 F.3d at 1534.  To demonstrate clearly established law, the plaintiff must cite "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts," which find the law to be as the plaintiff maintains.  **Medina v. City and County of Denver**, 960 F.2d 1493, 1498 (10th Cir.1992).  The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions clearly were prohibited.  **Hilliard v. City and County of Denver**, 930 F.2d 1516, 1518 (10th Cir. 1991) (citing **Hannula v. City of Lakewood**, 907 F.2d 129, 131 (10th Cir. 1990).  In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  **Wilson v. Layne**, 526 U.S. at 615.  However, the plaintiff need not establish a "precise correlation between the then-existing law and the case at hand."  **Patrick v. Miller**, 953 F.2d 1240, 1249 (10th Cir.1992).

If the plaintiff satisfies both of these elements, the burden shifts to the defendant.  Unless the defendant demonstrates that there is no disputed issue of material fact relevant to the immunity analysis, a motion for summary judgment based on qualified immunity must be denied.  **Salmon v. Schwarz**, 948 F.2d 1131, 1136 (10th Cir.1991).

If the plaintiff fails to satisfy either part of the two-pronged inquiry, then the court must grant qualified immunity. **Albright**, 51 F.3d at 1535.  In short, although the court must review the evidence in the light most favorable to the plaintiff, the record must demonstrate clearly that the plaintiff has satisfied his heavy two-part burden.  In civil rights cases, a defendant's unlawful conduct must be demonstrated with specificity. **Davis v. Gracey**, 111 F.3d 1472, 1478 (10th Cir. 1997).

I have granted the defendants' motion for summary judgment as to Lemery's Fourth Amendment claim, and, thus, will not address in detail the qualified immunity defense as it concerns the Fourth Amendment claim.  Lemery has not established that French's actions constituted a violation of Lemery's Fourth Amendment rights.  Further, Lemery has not cited any law that supports his contention that, at the time of the incident, French's actions amounted to a Fourth Amendment seizure under clearly established law.  Lemery has not established a Fourth Amendment violation, and the individual defendants are entitled to qualified immunity as to Lemery's Fourth Amendment claim.

However, as discussed above, I conclude that a reasonable fact finder could find in favor of Lemery on his substantive due process claim, viewing the evidence in the record in the light most favorable to the plaintiff.  Lemery has satisfied his burden of coming forward with specific facts establishing an arguable substantive due process violation. Based on the cases cited by the plaintiff in support of his substantive due process claim, and the substantive due process cases discussed in this order, I conclude that there is a substantial correspondence between the conduct alleged by the plaintiff, the evidence cited by the plaintiff, and prior law establishing that such

conduct was clearly prohibited under substantive due process standards. The defendants, therefore, are not entitled to qualified immunity concerning Lemery's substantive due process claim.

## V. CONCLUSION & ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion for Summary Judgment** [#22], filed by defendants Mark Beckner, Richard French, and the City of Boulder on April 3, 2007, is **GRANTED** with regard to the plaintiff's claim under the Fourth Amendment;

2. That, thus, the plaintiff's Fourth Amendment claim is **DISMISSED** with prejudice; and

3. That the **Motion for Summary Judgment** [#22], filed by defendants Mark Beckner, Richard French, and the City of Boulder on April 3, 2007, is **DENIED** with regard to the plaintiff's substantive due process claim.

Dated June 28, 2007, at Denver, Colorado.

                                **BY THE COURT:**

                                **s/ Robert E. Blackburn**
                                **Robert E. Blackburn**
                                **United States District Judge**